STEPHEN FROTHINGHAM & *al. versus* LEVI E. McKUSICK.

The mortgagee of timber lands may maintain trespass or trover against any one who shall cut and carry away the timber, or afterwards convert it to his own use, without authority from such mortgagee, although under a license from the mortgagor given after the mortgage.

And if the mortgagee, after his right of action against the defendant has accrued, takes from the mortgagor an assignment of his rights arising under the contract by which the license was obtained, without waiving or agreeing to relinquish any rights as mortgagee, but wholly fails of obtaining any benefit therefrom, the original cause of action remains unaffected.

TROVER for a quantity of board logs, and also for a quantity of boards, with counts in trespass *de bonis asportatis* for the same. The case came before the Court on a motion for a new trial, because, as was alleged, the verdict was against law, against evidence, and against the weight of evidence; and also on a report of the case by the Judge presiding at the trial. If the rulings or instructions of the Judge were erroneous, the verdict for the defendant was to be set aside; otherwise judgment was to be rendered on the verdict, unless it should be set aside, on the motion, as against evidence.

The testimony is all given in the report. It seemed to be admitted on all sides, that the land had been mortgaged; that the plaintiffs were assignees of the mortgage; that the timber was cut under a contract with the mortgagees, made after the mortgage, under certain conditions; that the mortgagees claimed and demanded the timber and boards; and that they afterwards took from the mortgagors an assignment of their contract relative to the cutting of the timber, not relinquishing any rights of their own as mortgagees, but did not obtain any thing from it. The evidence reported is quite voluminous, and relates chiefly to matters having but little bearing on the facts on which the decision of the case was based.

The case was ably argued in writing, but mainly on grounds not taken into consideration in the opinion given by the Court.

*J. Granger* and *B. Bradbury*, for the plaintiffs.

*Bridges* and *Fuller*, for the defendant.

The opinion of the Court was drawn up by

WHITMAN C. J.— It does not seem to be controverted, that the plaintiffs were, at the time the timber in question was felled, the mortgagees of the land on which it had been standing and growing. And, as the ; law is settled in this State, *(Smith* v. *Goodwin,* 2 Greenl. 173) whoever cut and carried it way, without authority from them, was a trespasser ; and could thereby acquire no property in it. The property in the timber would still remain in the mortgagees, who might pursue and recover it, or its value, of any one who might become possessed of it ; or undertake to convert it to his own use. The two McKusicks, who cut and hauled it, were liable to an action *quare clausum,* &c. and might be declared against, after having taken it away, in trespass *de bonis asportatis,* or trover ; as might also any person concerned in aiding them in their tortious acts.

The defendant, as he proved by his witness, Royal McKusick, and, as he admitted, sawed and manufactured into boards six hundred and fifty thousand feet of the timber. He would, however, excuse himself upon the ground, that he did so upon being hired as the servant of one of those who cut it. But it appeared further, by the testimony of the witness introduced by him, that he furnished supplies, and aided by paying the workmen, under his employer, in cutting and hauling the timber, until his claim therefor, and for sawing, amounted to $3000, for which he was reimbursed nearly to the whole amount from the proceeds of the timber, one hundred thousand feet of which at least he sold himself. He then stands responsible to the plaintiffs, in this action, if not exonerated by the matter set up in defence ; as to which the burthen of proof rests upon him.

The defence set up is, that the person, under whom he acted, was licensed by the mortgagors to cut the timber, and to manufacture it into boards, upon certain terms and conditions ; and the evidence, if properly admissible, tended to show, that such was the fact. But the license was granted long after the conveyance in mortgage to the plaintiffs ; and so, in strict-

ness, was void.   But the defendant goes further, and proves, that the plaintiffs took an assignment of the rights of the mortgagors, arising under the license.   This, however, was not done until the timber in question had been cut, hauled and nearly all manufactured and disposed of by the defendant, and the person under whom he pretended to act.   The right of action against the defendant as a *tort feasor*, had long before become fixed in the plaintiffs; and could not be removed but by a release or accord and satisfaction.

The defendant, nevertheless, contends, that the taking of the assignment was a ratification of the authority of the mortgagors to grant the permit, and a waiver of the rights of the plaintiffs under their mortgage.   If it was so it must have been by implication.   There is no proof of any express agreement to that effect.   And it is difficult to perceive how the rights of the mortgagees, which had become fixed long prior to the assignment, could thereby, without an express agreement for the purpose, become annulled.

There was, besides, plenary evidence in the case, that the plaintiffs continually asserted these rights; and that the agent of the mortgagors, at the instigation of the person to whom the permit had been granted, became extremely solicitous, that the mortgagees should accept the timber share, that is, the value of the timber when standing, according to the terms of the permit; and it is rendered highly probable, by the evidence in the cause, that they finally consented to avail themselves of a remedy, if practicable, in that mode; and to be content upon receiving the timber share according to the terms of the permit; and, if they had succeeded, it would have amounted to an accord with satisfaction.   But the expedient proved wholly fruitless; and hence their original cause of action remained unaffected.   They were but in the condition of one who takes additional or collateral security for a debt due to him.   The one failing he might resort to the other.

It is therefore, perfectly clear on the one hand, that the plaintiffs made out a good case; and on the other, that the defendants' defence utterly failed; and a new trial must be granted.

The view, which we have thus taken of the case, renders it unnecessary that we should go into a consideration of the exceptions, ingeniously taken and argued, in reference to the rulings of the presiding Judge, and his instructions to the jury.

*New trial granted.*